UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
VILLAGE CONSTRUCTION CO., INC.,

                Plaintiff,

       - against -                                   03 Civ. 799 (CLB)

CED CONSTRUCTION PARTNERS, LTD.,

                Defendant.

------------------------------------------------------------x       ***Memorandum and Order***
CED CONSTRUCTION PARTNERS, LTD.,

                Counterclaim Plaintiff,

       - against -

VILLAGE CONSTRUCTION CO., INC. and
COLONIAL SURETY COMPANY,

                Counterclaim Defendants.
------------------------------------------------------------x
Brieant, J.

      By motion filed on March 11, 2005 (Doc. #69), Defendant CED moves under Fed. R. Civ. P. 60(a) to correct a claimed clerical error in the Court's Memorandum & Order dated March 1, 2005. Opposition papers were filed on March 30, 2005. Also before the Court is Plaintiff's cross-motion to amend the Judgment under Fed. R. Civ. P. 59(e). (Doc. #72). Opposition papers to this motion were filed on April 20, 2005. Under Local Civil Rule 6.3 of the Southern District of New York, oral argument was not heard on these motions.

      In its Memorandum & Order, the Court awarded Village $35,036.03 in total damages.

CED argues that, once certain mathematical errors are corrected, it is entitled to recover $54,964.57.

*Site Improvement Subcontract*

The Court concluded that CED's reasonable costs of completion and correction under this subcontract totaled $856,295.42. The correct total is actually $856,296.02. Village's recovery under the Site Improvement Subcontract must be reduced by $0.60, to $82,413.96.

*Concrete Subcontract*

The Court concluded that CED's reasonable costs of completion and correction under this subcontract totaled $285,353.68. CED argues that its actual costs were $375,353.68, a difference of $90,000. This difference is not the result of a clerical error. CED asserts that it was awarded $167,824.12 for structural concrete repairs. The Court did not award this amount. The Memorandum & Order states that "CED claims that it incurred costs of $409,257.84 in correcting Village's deficient work under the Concrete Subcontract. This number is comprised of $167,824.12 in structural concrete repairs." *See Memorandum & Order at 25-26*. The Court ends that paragraph by stating that "CED is entitled to recover those costs which are related directly to correcting Village's deficient concrete work." *See id. at 26.* The Court did not state that this amount equaled $167,824.12.

CED's exhibits demonstrate considerable overlap between alleged completion and correction costs, and its incurred expenses are unclear. On page 54 of CED's post-trial

submission, under the heading "Concrete Subcontract- Completion Costs," CED listed its completion costs within, among other exhibits, Defendant's Exhibit 507, tabs 27-39, 41-49, 51-52. CED also stated on page 57, under the heading "Concrete Subcontract-Remedial Costs," that its costs of structural concrete repairs were contained within tabs 42-48, the same tabs listed among the completion costs. Tabs 42-48, which are alleged to have been costs incurred in both completing and correcting structural concrete work, total slightly more than $150,000.

Also, the invoices which the Court discussed in its Memorandum & Order, contained within Defendant's Exhibit 452 and Defendant's Damage Exhibit 52, evidence alleged "contemporaneous job invoices for work that was not covered by its [Darlinds'] subcontract with CED. . . ." *See id. at 27.* These are expenses claimed to have been incurred by CED in completing concrete work. CED attempts to recover these same expenses again for work performed allegedly in correcting concrete work. The appropriate amount to be awarded CED for structural concrete work was not clear from its exhibits. The Court assumes that some expenses were incurred, but CED has failed to prove the exact amount with reasonable certainty. In light of these uncertainties, the Court concluded that a reasonable recovery for structural concrete repair was $77,270.44. Accordingly, any difference between what the Court awarded and what CED claims an entitlement to under the Concrete Subcontract is not attributable to clerical error.[1]

---

[1] Village is correct that the Court subtracted only $90,000 instead of the full $90,553.68. The Court corrects this inadvertent mistake to amount to the full $90,553.68.

*Village's Motion to Amend the Judgement*

Village moves also to amend the Judgment. It argues that the Court erred in deducting CED's actual costs of completion and correction from Village's contract recovery. It claims also that it is entitled to pre-judgment interest on its damages. This Court has broad discretion in deciding this motion, and a Rule 59(e) motion is an extraordinary remedy which should be granted cautiously. Rule 59(e) may not be used to re-litigate issues which have been decided already by the Court. A Rule 59(e) motion is a motion for reconsideration, similar to Fed. R. Civ. P. 60(b). A motion for reconsideration is not a substitute for a formal appeal, and may be granted only where the Court overlooked factual matters or controlling decisions which might have influenced the earlier decision materially. *See Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2nd Cir. 1995).

Village concedes that it was appropriate for the Court to deduct costs of completion from its contractual recovery, but argues that the appropriate costs of completion were its own anticipated costs, and not CED's actually incurred costs. Village argues further that it presented evidence of its anticipated completion costs in the schedule of values entered into at the commencement of its work on the Project, and at various times thereafter. In its memorandum in support of this motion, Village argues that "at least three reasonable methods [exist to calculate] Village's anticipated cost to complete each subcontract." The first method uses the schedule of values created by Mr. Volino when he visually inspected the Project on November 18, 2002, the date on which Village was terminated as subcontractor. The second method uses the schedule of values existing in October, 2002, the time-period of Village's last paid requisition. The final

method, which applies only to the Concrete Subcontract, awards Village the difference between Village's original subcontract with CED, and Village's sub-subcontract with Atlantic. These three methods produce a large difference in damage awards, from a high under the Site Work Subcontract of $321,66.97 to a low under that subcontract of $191,837.65. Under the Concrete Subcontract, Village's recovery ranges from a high of $137,000 to a low of $78,900.15. Village's anticipated completion costs under the Site Work Subcontract differ by nearly $150,000, depending on which damage method is used. Under the first method, Village's anticipated costs are $685,606.68, while under the second method they are $829,858.14. The range is narrower for the Concrete Subcontract, but the total anticipated costs still vary by approximately 17% ($150,070.00 to $176,750.00). Presenting a wide range of anticipated completion costs and resulting damages, arguing that each method is reasonable, and asking the Court essentially to "pick one" is not a "reasonably certain" and appropriate method of calculating damages.

The Court did not deduct completion costs from Village's recovery simply because CED incurred these costs. Rather, the Court considered CED's completion costs as reasonable evidence of the costs which Village would have incurred had it performed the remaining work due under the subcontracts. The Court does not consider Mr. Volino's analysis of the work remaining on November 18, 2002 to be a valid indication of Village's anticipated completion costs.

Under Village's second method of calculating its completion costs, its remaining

completion costs total $829,858.14. Village's argument concedes that this total is a reasonable approximation of its anticipated completion costs under the Site Work Subcontract. The Court deducted less than this amount from the remaining unpaid subcontract price. Based upon Village's own calculations, the Court's decision is reasonable and Village is not adversely affected thereby. The Court compared and balanced the costs incurred by CED against Village's remaining costs under the subcontracts, and concluded that CED's expenses in completing work were reasonable indications of the expenses which Village saved by virtue of CED's wrongful breach. Village ought not to object to the Court's method, because the Court used the same method in calculating Village's completion costs under the Concrete subcontract, and Village acknowledges that this calculation was proper. *See Pl.'s Br. at 16-17* ("Village's proof of damages is based on the schedule of values for each subcontract that were agreed to by both parties after extensive negotiation. . .We note that the Court relied on the Concrete Subcontract schedule of values for completion costs.").

Village argues further that it was improper to award CED its costs of correction because, as the Court concluded, CED failed to provide the required notice under ¶ 19, this failure was not excused, and CED did not terminate Village for cause under ¶ 20. Village argues correctly that had notice been provided, it would have been required to correct any work which was performed deficiently. But Village is incorrect that CED's breach removed Village's obligation to pay correction costs.

The Court's decision did not deprive Village of the benefit of its bargain with CED. As

the Court concluded in its Memorandum & Order, under the subcontracts, unilateral termination by CED without notice constituted a breach of contract. This contractual provision did not eliminate Village's obligation to pay for correction costs. CED is entitled to the reasonable expenses it incurred correcting Village's deficiently performed work. The Memorandum & Order recognized that principle of New York law. *See Gem Drywall Corp. v. C. Scialdo & Sons, Inc.*, 35 N.Y.2d 781 (1974); *F. Garofalo Elec. Co. v. N.Y. Univ.,* 300 A.D.2d 186, 189 (1st Dep't 2002) ("If [Plaintiff] substantially performed its contractual obligations, then it would be entitled to the payment due under the contract less the cost of any correction of defects in its performance."); *Mirisis v. Renda,* 83 A.D.2d 572, 573 (2nd Dep't 1981) ("recovery [in a construction contract] is limited to the contract price less appropriate allowances for the cost of completing omissions and correcting defects."); *Pilgram Homes & Garages, Inc. v. Fiore,* 75 A.D.2d 846 (2nd Dep't 1980) ("In the area of construction contracts it is well established that substantial performance will support recovery of the contract price less appropriate allowances for the cost of completing omissions and correcting defects."); *Beaumont Birch Co. v. Najjar Industries Inc.,* 477 F. Supp. 970, 972 (S.D.N.Y. 1979) (Weinfeld, J.) (the New York rule on contract damages where plaintiff substantially performs is clear - - "plaintiff may recover the contract price less the cost of completion and the cost of correcting defects.") (applying New York law); *Picks v. McCombs*, 57 A.D.2d 1078, 1079 (4th Dep't 1977). In this case, Village substantially performed under both subcontracts. It was entitled to recover the remaining contract price, but it was proper for the Court to deduct CED's reasonable costs to correct Village's work, along with Village's reasonable anticipated completion costs.

**Conclusion**

CED's motion to correct a clerical error is granted as to the Site Improvement Subcontract, and denied as to the Concrete Subcontract. Village's motion is granted as to its request to correct a clerical error and its request for prejudgment interest, and denied in all other respects. Village's total award is corrected to amount to $35,589.71, plus interest at the New York State legal rate of 9% from November 18, 2002 until March 1, 2005.

The Clerk shall file an Amended Judgment.

X
    X
        X
            X
                X
                    X
                        X
                            X
                                X
                                    X
                                        X
                                            X

SO ORDERED.

Dated: White Plains, New York
       April 29, 2005

                                          _____
                                          Charles L. Brieant, U.S.D.J.